UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMINA HAMANI,<br><br>　　　　　Plaintiff,<br><br>　-against-<br><br>WEST HARLEM COMMUNITY<br>ORGANIZATION, INC.,<br><br>　　　　　Defendant. | Case No.:  22-cv-10819<br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Amina Hamani ("Plaintiff Hamani") by and through counsel alleges as follows:

**INTRODUCTION**

1.　　　Plaintiff Hamani, a hardworking Nigerien immigrant, is a devout Muslim woman whose sincerely-held religious beliefs require her to pray at certain times of the day, including an afternoon prayer that must take place between 1:00 p.m. and 4:00 p.m., a practice that she has observed since she was a young child.  Plaintiff Hamani worked for Defendant West Harlem Community Organization ("WHCO") for three days until WHCO's refusal to accommodate Plaintiff Hamani's religious practice of daily prayer after 1:00 p.m. forced her to resign, constituting a violation of federal, state, and local law.

2.　　　Defendant WHCO refused to accommodate Plaintiff Hamani's religious practice that requires her to pray between 1:00 p.m. and 4:00 p.m. each day. Plaintiff Hamani informed WHCO of her prayer requirement and requested to take her lunch break — which was scheduled for either 11:00 a.m., 12:00 p.m., or 1:00 p.m.— at 1:00 p.m. every day so that she could pray. At her interview and prior to beginning her employment, WHCO agreed to this request. Upon beginning her employment, WHCO refused to accommodate Plaintiff Hamani's afternoon prayer

requirement by providing her with the necessary lunch hour. Desperate for time for her prayers, Plaintiff Hamani then requested a mere five-minute break after 1:00 p.m. so that she could pray. WHCO also denied this request.

3.     Defendant WHCO told Plaintiff Hamani that she would need to pray during her lunch break, which could be at 11:00 a.m., 12:00 p.m., or 1:00 p.m. depending on the day.  This was not an accommodation as it did not allow Plaintiff Hamani to pray at the time required by her religion. WHCO denied Plaintiff Hamani's request for an accommodation despite there being available reasonable accommodations that WHCO could have made and without engaging in the interactive process. WHCO forced Plaintiff Hamani to choose between her employment and compromising her sincerely-held religious beliefs. When Plaintiff Hamani informed WHCO that her prayer time was so important to her that she could not work without it, she was forced to resign.

4.     This action arises out of, *inter alia*, Defendant WHCO's failure to reasonably accommodate Plaintiff's religious practices, failure to engage in the interactive process with Plaintiff Hamani, and the adverse employment action and constructive termination of Plaintiff Hamani based on her religious beliefs.

5.     Plaintiff brings claims under Title VII of the Civil Rights Act of 1964., 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").

6.     Plaintiff Hamani exhausted her administrative remedies by filing a charge with the New York District Office of the Equal Employment Opportunity Commission ("EEOC") on or about July 29, 2019.

7.     On September 25, 2022, the EEOC issued Plaintiff Hamani a Right to Sue Letter.

## JURISDICTION

8.      This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331.

9.      This Court has jurisdiction over Plaintiff's NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367, in that the claims arise out of the same set of operative facts and are so related to Plaintiff's Title VII claims that they form part of the same case or controversy.

## VENUE

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## THE PARTIES

11.     Plaintiff Hamani is a resident of New York County in the State of New York.

12.     Defendant WHCO employed Plaintiff Hamani from on or about January 5, 2019 until January 9, 2019.

13.     Defendant WHCO is a not-for-profit charitable corporation, incorporated under the New York State Not for Profit Corporation Law.

14.     During the period relevant to this action, Defendant WHCO employed Plaintiff Hamani as an Assistant Teacher in their EarlyLearn NYC Preschool Program (the "Preschool") located at 121 West 128th Street New York, NY 10027.

15.     During the period relevant to this action, Defendant WHCO employed more than fifteen (15) workers at the Preschool.

16.     During the period relevant to this action Defendant WHCO was an employer defined by Title VII as it is "a person engaged in an industry affecting commerce who has fifteen

or more employees for each working day in each of twenty or more calendar weeks in the current

or preceding calendar year, and any agent of such a person." 42 U.S.C. 2000e (b).

17.    During the period relevant to this action, Defendant WHCO was an employer as

defined by NYSHRL as it is an employer within the state of New York with more than four (4)

employees. N.Y. Exec. Law § 292(5).

18.    During the period relevant to this action, Defendant WHCO was an employer as

defined by NYCHRL as it has more than four (4) employees. N.Y.C. Admin. § 8-102.

## STATUTORY FRAMEWORK

### *Title VII*

19.    Title VII was enacted with the purpose of prohibiting employment discrimination

based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e *et seq.*

20.    Under Title VII, it is an unlawful employment practice for an employer "(1) to

fail to or refuse to hire or discharge any individual, or to otherwise discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin; or (2) to limit,

segregate, or classify his employees or applicants for employment in any way which would

deprive or tend to deprive any individual of employment opportunities or otherwise adversely

affect his status as an employee, because of such individual's race, color, religion, sex, or

national origin." 42 U.S.C. § 2000e-2(a).

21.    The term "religion" includes all aspects of religious observance and practice, as

well as belief. 42 U.S.C. § 2000e(j).

22.     Title VII imposes an affirmative obligation on employers to make reasonable accommodations for their employees' religious beliefs and practices. 42 U.S.C. § 2000e(j); 29 C.F.R. § 1605.2(b).

23.     Under Title VII, the burden is on the employer to demonstrate "that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employers' business." 42 U.S.C. §2000e(j).

24.     Under Title VII, employers are prohibited from retaliating against an employee "because he has opposed an unlawful employment practice...or because he is made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must establish: "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

25.     Where courts find that employers intentionally engaged in an unlawful employment practice, the court may award such damages as the court deems appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with back pay, or any other equitable relief as the court deems appropriate. 42 U.S.C. § 2000e-5.

26.     Further, where an employer engaged in intentional unlawful discrimination, in other words not by way of disparate impact claims, a complaining employee may recover compensatory and punitive damages. 42 U.S.C. § 1981a(a)(1).

27.     An employee may recover punitive damages against a private employer if the employee demonstrates that the employer engaged in a discriminatory practice with malice or with reckless indifference to the federally protected rights of an aggrieved employee, provided that the complaining party cannot recover under section 1981. 42 U.S.C. § 1981a(b)(1).

28.     The sum of the amount of compensatory damages awarded for religious discrimination related to future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and the amount of punitive damages awarded for religious discrimination, shall not exceed $50,000 in the case of an employer having more than 14 and fewer than 101 employees in each of twenty (20) or more calendar weeks in the current or preceding calendar year. 42 U.S.C. § 1981a(b)(3)(d).

29.     In any action proceeding under Title VII the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs for the same as a private person. 42 U.S.C. § 2000e-5(k).

### NYSHRL

30.     The NYSHRL was enacted "to assure that every individual within [NY State] is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, [or] training… not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants. [The NYSHRL ensures] equal opportunity to participate fully in the economic, cultural and intellectual life of the state, in order

to encourage and promote the development … by all persons within the state of such state programs [and] to eliminate and prevent discrimination in employment." N.Y. Exec. Law § 290.

31.     Under the NYSHRL, it is "an unlawful discriminatory practice for any employer, or an employee or agent thereof, to impose upon a person as a condition of obtaining or retaining employment...any term or condition that would require such person to violate or forego a sincerely held practice of his or her religion...unless after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business." N.Y. Exec. Law § 296(10)(a).

32.     Under the NYSHRL, 'undue hardship' means "an accommodation requiring significant expense or difficulty." N.Y. Exec. Law § 292(10)(d).

33.     Under the NYSHRL, an employee might be issued reinstatement, granted full, equal and unsegregated accommodations, back-pay, and awarded compensatory damages for being discriminated against. N.Y. Exec. Law § 297(4)(c).

### *NYCHRL*

34.     Under the NYCHRL's statement of Policy "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on… religion." N.Y.C. Admin. § 8-101.

35.     Under the NYCHRL, it is an unlawful discriminatory practice for an employer or an employee or agent thereof to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such a person to violate, or forego a practice of, such person's creed or religion, including but not limited to the

observance of any religious custom or usage, and the employer shall make reasonable accommodation to the religious needs of such person. N.Y.C. Admin. § 8-107(3)(a).

36.     Under the NYCHRL, reasonable accommodation as used in subdivision 8-107(3) means an "accommodation to an employee's religious observance or practice as shall not cause undue hardship in the conduct of the employer's business." N.Y.C. Admin. Code § 8-107(3)(b).

37.     Undue hardship as used in subdivision 8-107(3) means "an accommodation requiring significant expense or difficulty." N.Y.C. Admin. Code § 8-107(3).

38.     The employer bears the burden to demonstrate undue hardship. N.Y.C. Admin. § 8-107(3)(b).

39.     Under the NYCHRL, an accommodation shall be considered to constitute an undue hardship if it will result in the inability of an employee who is seeking a religious accommodation to perform the essential functions of the position in which the employee is employed. N.Y.C. Admin. Code § 8-107(3)(b).

40.     Under the NYCHRL, it is an unlawful discriminatory practice for an employer to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require an accommodation for religious needs. N.Y.C. Admin. § 8-107 (28)(a)(1).

41.     Cooperative dialogue means "the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and difficulties that such potential accommodation may pose for the covered entity." N.Y.C. Admin. § 8-102.

42.     Under the NYCHRL, upon reaching a final determination at the conclusion of a cooperative dialogue, the covered entity must "provide any person requesting an accommodation who participated in the cooperative dialogue with a written final determination identifying any accommodation granted or denied." N.Y.C. Admin. § 8-107 (28)(d).

43.     Under the NYCHRL, an employee may be awarded reinstatement, back and front pay, a reasonable accommodation, compensatory damages, reasonable attorney's and other legal fees. N.Y.C. Admin. § 8-120.

## FACTS

44.      Plaintiff Hamani is a forty-year-old immigrant from Niger and a mother of five children. She immigrated to the United States when she was twenty-one years old and spoke no English.

45.     Plaintiff Hamani is a devout Muslim woman. She grew up practicing her religion with her entire family in Niger.

46.     Prayer is an essential component of Plaintiff Hamani's Muslim faith.

47.     Prayer must occur at certain hours during the day, including an afternoon prayer that takes place between 1:00 p.m. and 4:00 p.m.

48.     Plaintiff Hamani has followed this afternoon prayer practice since her childhood.

49.     Plaintiff Hamani has taught her children to pray between 1:00 p.m. and 4:00 p.m. just as her mother had taught her and her grandparents had taught her mother.

50.     On or around December 18, 2018, Plaintiff Hamani applied for a job to work as an assistant teacher at WHCO in their EarlyLearn NYC Preschool Program (the "Preschool").

51.     WHCO is a New York City Early Education Center (NYCEEC) school.

52.     On or around December 19, 2018, Plaintiff Hamani interviewed for the assistant teacher job with Mildred Rivera ("Deputy Director Rivera"), the Deputy Director of WHCO.

53.     During her interview, Plaintiff Hamani informed Deputy Director Rivera that she needed time to pray in the afternoon.

54.     During her interview, Plaintiff Hamani was told what her regular schedule would be and that she would have an hour lunch break. Plaintiff Hamani asked Deputy Director Rivera if she could take her lunch break at 1:00 p.m. or later, in order to accommodate her afternoon prayer. Deputy Director Rivera agreed.

55.     Plaintiff Hamani also informed Deputy Director Rivera during her interview that she would need to take vacation at certain times in order to observe religious holidays, to which Deputy Director Rivera also agreed.

56.     At the conclusion of the interview, Deputy Director Rivera offered Plaintiff Hamani the assistant teacher job at a rate of $15.00 per hour.

57.     Plaintiff Hamani was employed by WHCO from on or about January 5, 2019 until her constructive discharge on January 9, 2019.

58.     Plaintiff Hamani attended staff orientation on or about January 5, 2019.

59.     Plaintiff Hamani worked three days at the Preschool: January 7, January 8, and January 9.

60.     Plaintiff Hamani was generally scheduled to work from 8:00 a.m. to 4:00 p.m., Mondays through Fridays, with a one-hour lunch break.

61.     Staff had lunch hours at the following times: 11:00 a.m. to 12:00 p.m., 12:00 p.m. to 1:00 p.m., and 1:00 p.m. to 2:00 p.m.

62.     Plaintiff Hamani's first day of work was on January 7, 2019.

63.     On January 7, 2019, Nicole Altidor ("Assistant Director Altidor"), the Assistant Education Director at the Preschool, informed Plaintiff Hamani that she would not be able to take her lunch hour at 1:00 p.m. every day.

64.     Plaintiff Hamani was told that she would be required to take her lunch at 11:00 a.m. one or two days a week.

65.     Upon receiving this information, Plaintiff Hamani explained that she needed time after 1:00 p.m. each day to pray as she had stated at her interview. She further explained that she only needed five minutes to do so.

66.     Plaintiff Hamani asked if she could have five minutes after 1:00 p.m. to pray on the days she was given an earlier lunch hour.

67.     Plaintiff Hamani was told that a five-minute break after 1:00 p.m. each day she did not have a 1:00 p.m. lunch break was not possible.

68.     Plaintiff Hamani even offered to forego her lunch hour on these days in order to get time to pray after 1:00 p.m. WHCO also denied this request.

69.     On two of the three days that Plaintiff Hamani worked at the Preschool, her scheduled lunch hour was 1:00 p.m., so she was able to pray.

70.     On the other day, her scheduled lunch hour was at 11:00 a.m. On this day, she was able to pray because another teacher agreed to cover for her prayer time during the teacher's own 1:00 p.m. lunch break; however, the teacher indicated that this was a one-time occurrence.

71.     On January 9, 2019, her third day of work, Plaintiff Hamani was told that she would have to take her lunch break at 11:00 a.m. on the following day.

72.     On January 9, 2019, anxious about having to take her lunch break at 11:00 a.m. the next day and getting time for her prayers, Plaintiff Hamani again requested five minutes to

pray in the afternoon on days when she had to take an earlier lunch. Assistant Director Altidor told her that this was not possible.

73.     After 4:00 p.m. on January 9, 2019, Plaintiff Hamani met with the two other teachers in her classroom about her prayer time. The teachers stated that they must rotate lunch hours and that Plaintiff Hamani would have to take lunch at 11:00 a.m. on January 10, 2019.

74.     Plaintiff Hamani then went to speak with Assistant Director Altidor to see if anything could be done to allow her time to pray after 1:00 p.m.

75.     Assistant Director Altidor asked Plaintiff Hamani if she disclosed her need for prayer time during her interview. Plaintiff Hamani informed her that she had.

76.     Assistant Director Altidor then brought in Deputy Director Rivera, who had interviewed Plaintiff Hamani.  Deputy Director Rivera denied that she had told Plaintiff Hamani that she could take her lunch break at 1:00 p.m. to pray.

77.     Deputy Director Rivera and Assistant Director Altidor informed Plaintiff Hamani that she would need to pray during her lunch break, whenever that might be.

78.     Deputy Director Rivera and Assistant Director Altidor then asked Plaintiff Hamani if she would come to work and take lunch at 11:00 a.m. without getting afternoon prayer time.

79.     When Plaintiff Hamani informed Deputy Director Rivera and Assistant Director Altidor that she could not do this because she needed to pray in the afternoon, they told Plaintiff Hamani that she needed to resign and would have to write a resignation letter stating the reason for her resignation.

80.     At their request, Plaintiff Hamani wrote a letter stating, "I'm resigning my position because I cannot get a time for my prayers."

81.     After writing this letter, Plaintiff Hamani went to speak with the WHCO Director, Andrea Hayes ("Director Hayes"), and pleaded for daily time to pray after 1:00 p.m. in order to have the ability to keep her assistant teaching position. Plaintiff Hamani pleaded for just five minutes for her afternoon prayer.

82.     Director Hayes told Plaintiff Hamani that there was nothing she could do.

83.     Since WHCO refused to accommodate Plaintiff Hamani's request for prayer time, she was forced to resign.

84.     WHCO could have reasonably accommodated Plaintiff Hamani.

85.     The classroom that Plaintiff Hamani was assigned to work in had a teacher and two assistant teachers, including herself.

86.     The classroom had 13 students but was designed to have up to 20.

87.     There is a required 1:12 classroom ratio for staff to children in the classroom.

88.     In order to comply with the ratio, there needed to be two staff members in the classroom at a time.

89.     The three teachers in Plaintiff Hamani's classroom had scheduled lunch breaks from 11:00 a.m. to 12:00 p.m., 12:00 p.m. to 1:00 p.m., and 1:00 p.m. to 2:00 p.m. The teachers would alternate lunch hours. One teacher would leave for their lunch break while the other two remained in the classroom.

90.     During lunch hours, when there were only two teachers in the classroom at a time, if one teacher needed to use the bathroom or go to the office, the teacher would call the office for coverage while the teacher stepped out.

91.     During the hours from 2:00 p.m. to 4:00 p.m., there were three teachers in the classroom because there were no scheduled lunch hours.

92.     When there were three teachers in the classroom, if one teacher had to step out to use the bathroom or go to the office, the teacher would step out without notifying the office while the other two teachers remained in the classroom since no coverage was needed.

93.     Upon information and belief, there were 16 employees who were legally permitted to provide coverage to classrooms at the Preschool.

94.     WHCO had sufficient coverage to ensure classroom ratio compliance to accommodate Plaintiff Hamani's afternoon prayer.

95.     WHCO failed to reasonably accommodate Plaintiff Hamani.

96.     WHCO failed to engage in sufficient interactive process and/or cooperative dialogue with Plaintiff Hamani.

97.     WHCO failed to provide Plaintiff Hamani with a written, final determination regarding her accommodation request.

98.     Plaintiff Hamani felt humiliated by WHCO's treatment of her.

99.     Plaintiff Hamani was devastated about having to choose between a job she desperately needed to support her family and between her devout religious beliefs.

100.     At the time, Plaintiff Hamani had four minor children and her family desperately needed the income from her job.

101.     At the time, Plaintiff Hamani also provided financial support for her elderly parents in Niger. All of her siblings still live in Niger, so it was Plaintiff Hamani's responsibility as the one living in America to provide this support. Losing this job meant that Plaintiff Hamani could not assist her parents financially.

102.     Plaintiff Hamani's parents were in poor health during this time, so desperately needed the additional support. Her father was very sick at the time and needed surgery, while her

mother's own health conditions worsened with the stress of caring for her father. Plaintiff Hamani did not tell her parents when she lost her job because she knew how much they depended on her support and she did not want to add to their worry.

103.    On or about March 11, 2019, Plaintiff Hamani sent a demand letter to WHCO requesting reinstatement and back pay due to WHCO's failure to accommodate.

104.    WHCO was still unwilling to provide Plaintiff Hamani with a reasonable accommodation for her afternoon prayer.

105.    On or about July 29, 2019, Plaintiff Hamani filed a charge of discrimination and retaliation under the Title VII of the Civil Rights Act of 1964 with the EEOC.

106.    On September 25, 2022, the EEOC issued Plaintiff Hamani a Right to Sue Letter that is attached hereto as Exhibit A.

107.    As a result of Defendant's failure to engage in the interactive process, failure to provide a reasonable accommodation, and Defendant's unlawful religious discrimination forcing Plaintiff Hamani to resign, Plaintiff Hamani felt embarrassed, humiliated, angry, scared, was unable to sleep, had trouble concentrating, and had loss of appetite, which persisted after the discrimination.

108.    These events impacted Plaintiff Hamani's daily mood to the point that her children noticed. Her children would ask her why she was so upset and would offer to give her hugs and kisses as condolences for her observable change in mood.

109.    As a result of Defendant's unlawful discrimination, Plaintiff Hamani was out of work for about eight months, causing her to forego essential income for her family.

110. As a result of Defendant's unlawful behavior, Plaintiff Hamani suffered harm including, but not limited to, lost wages, emotional harm, and the loss of other employment benefits.

### THE FIRST CAUSE OF ACTION
### Title VII of the Civil Rights Act of 1964
### Failure to Provide a Reasonable Accommodation

111. Plaintiff Hamani realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

112. Defendant is an employer under Title VII. 42 U.S.C. § 2000e (b).

113. Plaintiff Hamani is an employee within the meaning of Title VII. 42 U.S.C. § 2000e(f).

114. Plaintiff Hamani's religious beliefs and prayer practices fall under religion as defined by Title VII. 42 U.S.C. § 2000e(j).

115. Plaintiff Hamani requested a religious accommodation within the meaning of the Title VII. 42 U.S.C. § 2000e(j).

116. Defendant knew that Plaintiff Hamani was a devout Muslim woman and needed an accommodation to partake in her daily afternoon prayer.

117. Defendant could have reasonably accommodated Plaintiff Hamani's religious practices.

118. Defendant failed to engage in the interactive process with Plaintiff Hamani.

119. Defendant failed to reasonably accommodate Plaintiff Hamani's religious practices.

120. Defendant discriminated against Plaintiff Hamani by failing to accommodate her religious practices in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e(j).

121.     As a result of Defendant's unlawful discriminatory actions, Plaintiff Hamani is entitled to back pay, lost benefits, compensatory damages, and punitive damages.

## THE SECOND CAUSE OF ACTION
### Title VII of the Civil Rights Act
### Religious Discrimination

122.     Plaintiff Hamani realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

123.     Defendant is an employer under Title VII. 42 U.S.C. § 2000e(b).

124.     Plaintiff Hamani is an employee within the meaning of Title VII. 42 U.S.C. § 2000e(f).

125.     Plaintiff Hamani's religious beliefs and practices fall under religion as defined by Title VII. 42 U.S.C. § 2000e(j).

126.     WHCO forced Plaintiff Hamani to choose between giving up her job and compromising her devout religious practices to keep her job.

127.     WHCO forced Plaintiff Hamani to resign from her position, constituting a constructive discharge.

128.     Defendant discriminated against Plaintiff Hamani by subjecting her to adverse terms, conditions, and privileges of employment based on her religion. 42 U.S.C. § 2000e-2(a).

129.     As a result of Defendant's unlawful discriminatory actions, Plaintiff Hamani is entitled to reinstatement, back pay, front pay, compensatory damages, and punitive damages.

## THE THIRD CAUSE OF ACTION
### Title VII of the Civil Rights Act of 1964
### Retaliation

130.     Plaintiff Hamani realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

131.    Plaintiff Hamani requested a religious accommodation within the meaning of the Title VII. 42 U.S.C. § 2000e(j).

132.    Plaintiff Hamani engaged in protected activity under Title VII when she requested a reasonable accommodation. 42 U.S.C. § 2000e-3(a).

133.    Defendant had knowledge of Plaintiff Hamani's request for reasonable accommodation.

134.    On or about January 9, 2019, Defendant forced Plaintiff Hamani to choose between her employment and her sincerely-held religious beliefs and constructively terminated Plaintiff Hamani because of her religious practices, without engaging in the interactive process.

135.    Defendant's constructive termination of Plaintiff Hamani constitutes a materially adverse action.

136.    Defendant retaliated against Plaintiff Hamani in violation of Title VII. 42 U.S.C. § 2000e-3(a).

137.    As a result of Defendant's unlawful retaliation against Plaintiff Hamani, she is entitled to reinstatement, back pay, front pay, compensatory damages, and punitive damages.

138.    Defendant's intentional conduct toward Plaintiff Hamani was done with reckless indifference to her protected statutory rights, entitling her to an award of punitive damages.

### THE FOURTH CAUSE OF ACTION
### New York State Human Rights Law (NYSHRL)
### Failure to Provide a Reasonable Accommodation

139.    Plaintiff Hamani realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

140.    Plaintiff Hamani was a covered employee pursuant to the NYSHRL. N.Y. Exec. Law § 292(6).

141.    Defendant is a covered employer pursuant to the NYSHRL. N.Y. Exec. Law § 292(5).

142.    Plaintiff Hamani's afternoon prayer is a sincerely held religious practice of her Muslim faith. N.Y. Exec. Law § 296(10)(a).

143.    Plaintiff Hamani requested an accommodation pursuant to the NYSHRL. N.Y. Exec. Law § 292(10)(a).

144.    Defendant knew that Plaintiff Hamani was a devout Muslim woman and needed an accommodation to partake in her daily afternoon prayer.

145.    Despite Plaintiff Hamani's numerous attempts to receive a mere five minutes of afternoon prayer time, Defendant failed to engage in a good faith interactive process, as required by the NYSHRL.

146.    Defendant could have reasonably accommodated Plaintiff Hamani's religious practice.

147.    Defendant failed to reasonably accommodate Plaintiff Hamani's religious practice as required by the NYSHRL.

148.    Defendant discriminated against Plaintiff Hamani by failing to reasonably accommodate her religious practice in violation of the NYSHRL. N.Y. Exec. Law § 296(10)(a).

149.    As a proximate result of Defendant's unlawful actions against Plaintiff Hamani, Plaintiff Hamani suffered earning losses and benefit losses, including front pay, back pay, and lost benefits.

150.    As a further proximate result of Defendant's actions, Plaintiff Hamani suffered and continues to suffer emotional distress, the effects of stress and mental anguish, and other incidental and consequential damages and expenses.

151.    Plaintiff Hamani is entitled to reinstatement, granted full, equal and unsegregated accommodations, back pay, and awarded compensatory damages pursuant to the NYSHRL. N.Y. Exec. Law § 297(4)(c).

### THE FIFTH CAUSE OF ACTION
### New York State Human Rights Law (NYSHRL)
### Religious Discrimination

152.    Plaintiff Hamani realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

153.    Plaintiff Hamani was a covered employee pursuant to the NYSHRL. N.Y. Exec. Law § 292(6).

154.    Defendant is a covered employer pursuant to the NYSHRL. N.Y. Exec. Law § 292(5).

155.    Plaintiff Hamani's afternoon prayer is a sincerely held religious practice of her Muslim faith. N.Y. Exec. Law § 296(10)(a).

156.    Because of WHCO's refusal to accommodate Plaintiff Hamani's afternoon prayer, she was forced to choose between resigning and compromising her sincerely held religious practice to retain her job.

157.    Employer WHCO imposed a condition on Plaintiff Hamani that required her to violate her afternoon prayer practice to retain her employment. N.Y. Exec. Law § 296(10)(a).

158.    Defendant unlawfully discriminated against Plaintiff Hamani because of her religious practice under the NYSHRL. N.Y. Exec. Law § 292(10)(a).

159.    As a proximate result of Defendant's unlawful actions against Plaintiff Hamani, she suffered and continues to suffer substantial losses, including earnings and other employment benefits.

160.     As a further proximate result of Defendant's actions, Plaintiff Hamani suffered and continues to suffer emotional distress, the effects of stress and mental anguish, and other incidental and consequential damages and expenses.

161.     Plaintiff Hamani is entitled to reinstatement, back pay, and awarded compensatory damages pursuant to the NYSHRL. N.Y. Exec. Law § 297(4)(c).

<div align="center">

**THE SIXTH CAUSE OF ACTION**
**New York City Human Rights Law (NYCHRL)**
**Failure to Provide a Reasonable Accommodation**

</div>

162.     Plaintiff Hamani realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

163.     Plaintiff Hamani was a covered employee pursuant to the NYCHRL. N.Y.C. Admin. Code § 8-102.

164.     Defendant is an employer pursuant to the NYCHRL. N.Y.C. Admin. Code § 8-102.

165.     Plaintiff Hamani informed WHCO of her religious practices.

166.     Plaintiff Hamani requested a reasonable accommodation pursuant to the NYCHRL. N.Y.C. Admin. Code § 8-107(3)(a).

167.     Defendant knew that Plaintiff Hamani was a devout Muslim woman and needed an accommodation to partake in her afternoon prayer.

168.     Defendant could have reasonably accommodated Plaintiff Hamani's religious practice.

169.     Defendant failed to reasonably accommodate Plaintiff Hamani's religious practice.

170.     Defendant's failure to reasonably accommodate Plaintiff Hamani's religious practice constitutes discrimination based on religion in violation of the NYCHRL.  N.Y.C. Admin. § 8-107(3)(a).

171.   As a result of Defendant's unlawful discrimination, Plaintiff Hamani is entitled to reinstatement, back and front pay, compensatory damages, reasonable attorney's and other legal fees. N.Y.C. Admin. § 8-120.

## THE SEVENTH CAUSE OF ACTION
## New York City Human Rights Law (NYCHRL)
## Failure to Engage in Cooperative Dialogue

172.   Plaintiff Hamani realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

173.   Plaintiff Hamani was a covered employee pursuant to the NYCHRL. N.Y.C. Admin. Code § 8-102.

174.   Defendant is an employer pursuant to the NYCHRL. N.Y.C. Admin. Code § 8-102.

175.   Plaintiff Hamani informed WHCO of her religious practices.

176.   Plaintiff Hamani requested a reasonable accommodation pursuant to the NYCHRL. N.Y.C. Admin. Code § 8-107(3)(a).

177.   Defendant failed to engage in a good faith cooperative dialogue despite Plaintiff Hamani's numerous requests for a reasonable accommodation for her afternoon prayer. N.Y.C. Admin. Code § 8-107(28)(a)(1).

178.   Defendant's failure to engage in cooperative dialogue with Plaintiff Hamani to find a reasonable accommodation is a violation of the NYCHRL. N.Y.C. Admin. Code § 8-107(28).

179.   Defendant failed to provide Plaintiff Hamani with a final written determination identifying any accommodation granted or denied in violation of the NYCHRL. N.Y.C. Admin. § 8-107(28)(d).

180.    As a result of Defendant's unlawful discrimination, Plaintiff Hamani is entitled to reinstatement, back and front pay, compensatory damages, reasonable attorney's and other legal fees. N.Y.C. Admin. § 8-120.

## THE EIGHTH CAUSE OF ACTION
### New York City Human Rights Law
### Religious Discrimination

181.    Plaintiff Hamani realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

182.    Plaintiff Hamani was a covered employee pursuant to the NYCHRL. N.Y.C. Admin. Code § 8-102.

183.    Defendant is an employer pursuant to the NYCHRL. N.Y.C. Admin. Code § 8-102.

184.    Plaintiff Hamani's afternoon prayer constituted a practice of her Muslin religion pursuant to the NYCHRL. N.Y.C. Admin. Code § 8-107(3).

185.    Plaintiff Hamani was forced to choose between retaining her job at WHCO and violating her religious practice of afternoon prayer to keep her job.

186.    Defendant WHCO imposed a condition on Plaintiff Hamani that required her to violate her afternoon prayer practice to retain her employment. N.Y.C. Admin. Code § 8-107(3)(a).

187.    Plaintiff Hamani was forced to resign as to not forego her afternoon prayer.

188.    Defendant discriminated against Plaintiff Hamani in violation of NYCHRL because of her religion. N.Y.C. Admin. Code § 8-107(3)(a).

189.    As a result of Defendants' discrimination, Plaintiff Hamani is entitled to reinstatement, back and front pay, compensatory damages, reasonable attorney's and other legal fees. N.Y.C. Admin. § 8-120.

**WHEREFORE**, Plaintiff Hamani prays that this Court grant judgment to her containing the following relief:

1. An award of Plaintiff Hamani's damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating Plaintiff Hamani for loss of future salary and benefits;

2. An award of damages in an amount to be determined at trial to compensate Plaintiff Hamani for mental anguish and emotional injury;

3. An award of punitive damages;

4. An award of reasonable attorneys' fees and the costs of this action; and

5. Such other and further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff Hamani demands a trial by jury on all causes of action and claims with respect to which she has a right to a jury trial.


Dated: December 22, 2022

<div style="margin-left:40%">

Respectfully submitted,

*<u>s/ Caitlin Goldman</u>*
Caitlin Goldman, Esq.
Julia Rosner, Esq.
MANHATTAN LEGAL SERVICES
cgoldman@lsnyc.org
jrosner@lsnyc.org
1 W 125th Street, 2nd Floor
New York, NY 10027
Phone/Fax: 646-442-3176
*Attorneys for Plaintiff Hamani*

</div>